UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN RATEMO et al.,<br>    Plaintiffs,<br>v.<br>ISLAMIC REPUBLIC OF IRAN et al.,<br>    Defendants. | Civil Action No. 19-2067 (JDB) |
| JOSEPH KAZUNGA KATANA et al.,<br>    Plaintiffs,<br>v.<br>ISLAMIC REPUBLIC OF IRAN et al.,<br>    Defendants. | Civil Action No. 19-2068 (JDB) |
| PRUDENCE BUSHNELL et al.,<br>    Plaintiffs,<br>v.<br>ISLAMIC REPUBLIC OF IRAN et al.,<br>    Defendants. | Civil Action No. 22-646 (JDB) |

**MEMORANDUM ORDER**

These cases arise from the 1998 bombings of U.S. embassies in Kenya and Tanzania. See Ratemo v. Islamic Republic of Iran, Civ. A. No. 19-2067 (JDB), 2025 WL 294934, at *1–3 (D.D.C. Jan. 24, 2025).[1] Over one thousand plaintiffs seek damages from the Islamic Republic of Iran under the state-sponsored terrorism exception of the Foreign Sovereign Immunities Act ("FSIA")

---

[1] The three cases are Ratemo v. Islamic Republic of Iran, Civ. A. No. 19-2067 (JDB) (D.D.C. filed July 11, 2019); Katana v. Islamic Republic of Iran, Civ. A. No. 19-2068 (JDB) (D.D.C. filed July 11, 2019); and Bushnell v. Islamic Republic of Iran, Civ. A. No. 22-646 (JDB) (D.D.C. filed Mar. 9, 2022). The three cases have not been formally coordinated or consolidated, but they concern the same attacks, involve the same counsel, and have proceeded in tandem. The Court's description of the case generally refers to all three cases together. Unless otherwise noted, docket citations refer to the docket in Ratemo, Civ. A. No. 19-2067 (JDB). This opinion and the accompanying order will be filed on each docket.

1

for injuries caused by the attacks.  See 28 U.S.C. § 1605A.  Plaintiffs now request that this Court take judicial notice of Opati v. Islamic Republic of Iran, where Iran was held liable for the attacks in question, and grant them a default judgment on liability.  60 F. Supp. 3d 68 (D.D.C. 2014).  For the reasons set forth below, plaintiffs' motion is granted.

## BACKGROUND

On August 7, 1998, terrorists simultaneously detonated truck bombs outside the U.S. embassies in Nairobi, Kenya and Dar es Salaam, Tanzania.  See Opati v. Republic of Sudan, 590 U.S. 418, 420 (2020).  The attacks devastated the surrounding area and caused thousands of casualties.  Id.  In the years since, victims and their family members sued Iran for its role in assisting the perpetrators of the attacks.  Id.  That litigation established Iran's role in the attacks and those victims' entitlement to damages.  Id.

Plaintiffs in this action are victims and/or family members of victims who did not participate in the earlier litigation.  See 2d Mot. for Default J. [ECF No. 58] at 2.  In three separate complaints, they bring claims against Iran for assault and battery, intentional infliction of emotional distress (IIED), aiding and abetting, civil conspiracy, wrongful death, loss of consortium, survival, and punitive damages.  See 2d Am. Compl. [ECF No. 41] ¶¶ 204–32.

The FSIA establishes the requirements for the proper service of process on a foreign state.  A plaintiff may attempt service in four ways, sequentially: (1) by delivering a copy of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the foreign state," (2) by delivering a copy of the summons and complaint "in accordance with an applicable international convention on service," (3) by sending a copy of the summons and complaint and a notice of suit, as well as translations thereof, "by any form of mail requiring a

signed receipt," or (4) by sending the documents to the Secretary of State, who then transmits them "through diplomatic channels to the foreign state."  28 U.S.C. § 1608(a).

Here, neither a "special arrangement," id. § 1608(a)(1), nor international convention, id. § 1608(a)(2), is available for service on Iran.  See, e.g., Karcher v. Islamic Republic of Iran, 396 F. Supp. 3d 12, 15 (D.D.C. 2019).  Accordingly, plaintiffs attempted to serve Iran via mail, but to no avail.  See ECF Nos. 22–24.  Finally, plaintiffs attempted service through the Director of Overseas Citizens Services of the U.S. Department of State.  See ECF Nos. 29–32.  The State Department filed return of service affidavits for Iran, indicating that service had occurred.  Iran failed to file an answer or pleading of any kind, and the Clerk of Court entered default.  See ECF No. 34.

Plaintiffs then moved for default judgment on Iran's liability and to appoint special masters to administer damages proceedings.  See Mot. for Default J. [ECF No. 35].  In an FSIA action, a court may not enter default judgment "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  Courts therefore often conduct evidentiary hearings prior to granting default judgment to determine whether the defendant is responsible for the conduct at issue.  But Iran has already been held liable for the attacks at issue here in Opati, 60 F. Supp. 3d 68, so plaintiffs only asked that the Court take judicial notice of that decision, enter judgment on liability, and proceed to damages.  See Mot. for Default J. at 1.

The Court denied plaintiffs' motions for default judgment, finding it impossible to determine what theory of liability various plaintiffs were eligible to recover under without additional plaintiff-specific details.  See Order [ECF No. 38].  Even after plaintiffs amended their complaints, the relationship between certain plaintiffs and the bombings remained uncertain.  In many cases, the complaint failed to explain where plaintiffs were at the time of the bombings and

3

how they experienced the attack, if at all.  See, e.g., Katana 2d Am. Compl. ¶ 15, ECF No .42.  After a hearing and briefing, including a submission from the United States, this Court issued an opinion holding that victims outside the blast radius of the bombings could not recover for IIED, and directed plaintiffs to identify specific plaintiffs eligible to recover consistent with that rule.  Mem. Op. ("Limiting Opinion") [ECF. No. 57] at 17–18.  Following that order, plaintiffs filed a second motion for default judgment with an updated list of plaintiffs.  See 2d Mot. for Default J.

The Court reviewed plaintiffs' second motion for default judgment and requested additional briefing to clarify whether and how the revised list of plaintiffs complied with the Limiting Opinion.  See Order for Suppl. Briefing [ECF. No. 60].  The Court expressed concern that the updated list appeared to still include plaintiffs beyond the scope of the Limiting Opinion.  See ECF No. 59.  Plaintiffs explained how the parties identified could recover consistent with the Limiting Opinion and filed another revised list of plaintiffs with more detailed explanations of their connections to the attacks.  See ECF Nos. 60, 61.

The Court, satisfied with the plaintiffs' representations at this juncture, now turns to the renewed motion for default judgment.

**FINDINGS OF FACT**

To enter default judgment in an FSIA case, courts "reach their own, independent findings of fact."  Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 172 (D.D.C. 2010).  In so doing, courts may review "numerous evidentiary sources," id. at 171, including by taking judicial notice of any fact that is "not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2).  Indeed, judges in this district often take judicial notice of prior FSIA terrorism cases

4

involving the same attacks as the case before them.  See e.g., Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 58–59 (D.D.C. 2010).

The Court now takes judicial notice of Opati, 60 F. Supp. 3d 68, and adopts the findings of fact therein.  The evidence in Opati, which in turn relied on Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 135–46 (D.D.C. 2011),[2] establishes that al Qaeda perpetrated and claimed responsibility for the 1998 U.S. embassy attacks in Nairobi, Kenya and Dar es Salaam, Tanzania.  Opati, 60 F. Supp. 3d at 74.  Initially, al Qaeda lacked the technical expertise to carry out large scale, complex bombings.  Id.  But during the 1990s, the government of Iran supplied material aid and support to al Qaeda by connecting them with other terrorist groups, granting safe passage, and providing technical training.  Owens, 826 F. Supp. 2d at 135.  This assistance was designed to support al Qaeda in launching large-scale bombing attacks against U.S. targets.  Id.  Iran provided al Qaeda with training on how to destroy large buildings with sophisticated explosives that al Qaeda was otherwise incapable of using.  Opati, 60 F. Supp 3d at 74.  This training was undertaken with the full knowledge and authorization of the Iranian government.  Id.  Using the training they received from Iran, al Qaeda executed the 1998 U.S. embassy attacks.  Id.  As a result, hundreds were killed and thousands were wounded.  Id.  The evidence in Opati overwhelmingly supports the conclusion that Iran materially supported al Qaeda in the commission of these attacks.

## CONCLUSIONS OF LAW

**A.  Jurisdiction**

Under the FSIA, foreign nations are generally immune from suit in American courts.  Borochov v. Islamic Republic of Iran, 94 F.4th 1053, 1057 (D.C. Cir. 2024).  One exception to that rule is FSIA section 1605A, which allows suits for "money damages . . . against a foreign state for

---

[2] Both Opati and Owens are decisions of the undersigned judge.

personal injury or death that was caused by an act of . . . extrajudicial killing . . . or the provision of material support or resources for such an act," 28 U.S.C. § 1605A(a)(1), provided the defendant is designated a state sponsor of terrorism and the claimant or victim is a U.S. national, member of the armed forces, or employee or contractor of the U.S. government. Id. § 1605A(a)(2). Section 1605A provides U.S. nationals, service members, government employees, and contractors with a private right of action to sue state sponsors of terrorism for personal injury or death caused by acts for which the section 1605A exception to immunity applies. Id. § 1605A(c).

Based on the facts established in Opati, the Court has subject matter jurisdiction over Iran, and plaintiffs who are U.S. nationals or worked for the U.S. government have causes of action under FSIA section 1605A. 60 F. Supp. 3d at 75; see also Owens, 826 F. Supp. 2d at 148–51. Plaintiffs who are foreign-national family members of victims lack a federal cause of action, but they may pursue claims under the laws of the District of Columbia. See Owens, 826 F. Supp. 2d at 153–57.

Federal courts have personal jurisdiction over foreign states when an exception to immunity applies and service has been properly made under FSIA section 1608. See Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 396 (D.D.C. 2015). Here, Iran satisfies the section 1605A state-sponsored terrorism exception to immunity and plaintiffs met the FSIA's service of process requirements. Personal jurisdiction over Iran is thus proper. Accordingly, the Court concludes that the requirements of personal jurisdiction and subject matter jurisdiction are satisfied, and that the plaintiffs have valid causes of action against Iran.

### B. Liability

Plaintiffs who are U.S. citizens or U.S. government employees are entitled to damages under the cause of action in FSIA section 1605A. Section 1605A provides that plaintiffs may

recover economic damages, solatium, pain and suffering, and punitive damages. Generally, a plaintiff must show that the consequences of a defendant's actions were reasonably certain and that the amount of damages by a reasonable estimate is consistent with the application of the American rule on damages. See Hill v. Republic of Iraq, 328 F.3d 680, 681 (D.C. Cir. 2003). Here, based on the evidence from Opati, plaintiffs have demonstrated that Iran's conduct was reasonably certain to injure them. See Opati, 60 F. Supp. 3d at 76. Next, because the section 1605A cause of action does not stipulate the elements of the claims the Court should apply, the Court must "apply general principles of tort law" to determine plaintiffs' entitlement to damages on their federal claims. See Owens, 826 F. Supp. 2d at 157 n.3.

Plaintiffs have advanced theories of liability for assault and battery, intentional infliction of emotional distress (IIED), aiding and abetting, civil conspiracy, wrongful death, loss of consortium, survival, and punitive damages. See 2d Am. Compl. ¶¶ 204–32. Iran is liable for assault if, and when, it provided material support (1) "intending to cause a harmful . . . contact with [another's person], or an imminent apprehension of such a contact" and (2) the other was "thereby put in such imminent apprehension." Restatement (Second) of Torts § 21(1). Iran is liable for battery if, and when, it provided material support (1) "intending to cause a harmful or offensive contact with [another's person], or an imminent apprehension of such a contact" and (2) "a harmful contact with [the other] directly or indirectly result[ed]." Id. § 13. The facts of Opati make clear that Iran provided material support with the intention of causing harmful contact and fear thereof and that such apprehension and contact resulted.[3] 60 F. Supp. 3d at 74.

---

[3] The claims for conspiracy and aiding and abetting need not be addressed separately in view of this Court's determination that Iran provided material support to al Qaeda, which also establishes their direct liability for the bombings at issue. See Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 78 n.5 (D.D.C. 2017).

7

In addition to recovery for assault and battery, survivors may recover for pain and suffering. Acts of terrorism, "by their very definition," amount to extreme and outrageous conduct and are thus compensable by analogy under the tort of "[IIED]." Valore, 700 F. Supp. 2d at 77 (quoting Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 22 (D.D.C. 2009)); see also id. (quoting Restatement (Second) of Torts § 46(1)). Immediate family members—if U.S. nationals—may also recover for IIED. See Roth, 78 F. Supp. 3d at 401. Additionally, estate-plaintiffs may recover for wrongful death or survival under the cause of action in FSIA section 1605A or for survival under D.C. law but may not recover for survival "[i]f death was instantaneous [because then] there can be no recovery . . . for pain and suffering" of the decedent. Valore, 700 F. Supp. 2d at 77–78, 81. But the Court notes that plaintiffs who have brought multiple claims may only recover under one such theory, as double recovery is prohibited. Id. at 77.

Family members who are not U.S. nationals, and thus lack the cause of action under section 1605A, are entitled to damages under District of Columbia law.[4] See Owens, 826 F. Supp. 2d at 153–57 (conducting choice of law analysis and concluding District of Columbia law most appropriate). As in Opati, and other FSIA cases, this court will apply District of Columbia law to the claims of any plaintiff for whom jurisdiction is otherwise proper but who lack a cause of action under section 1605A. 60 F. Supp. 3d at 76. Plaintiffs in this category seek to recover solatium damages under D.C. law based on IIED claims. To establish a prima facie case of IIED under D.C. law, "a plaintiff must show: (1) extreme and outrageous conduct on the part of the

---

[4] Non-U.S.-national family members in state-sponsored terrorism cases satisfy the FSIA § 1605A exemption to sovereign immunity because the statute requires that the victim of the attack (as opposed to the plaintiff) be a U.S. national, member of the armed forces, government employee, or contractor. However, they cannot make use of the 1605A cause of action, which separately requires the plaintiff to be a U.S. national, member of the armed forces, government employee, or contractor. Instead, non-U.S.-national family members may bring claims under other causes of action, such as those available under D.C. law. See Owens, 826 F. Supp. 2d at 153 (citing Est. of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 19–20 (D.D.C. 2011)).

8

defendant which, (2) either intentionally or recklessly, (3) causes the plaintiff severe emotional distress." Id. (citing Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002)). Acts of terrorism "by their very definition" amount to extreme and outrageous conduct, id. (quoting Valore, 700 F. Supp. 2d at 77); the defendants in this case acted intentionally and recklessly; and their actions caused each plaintiff severe emotional distress, see Owens, 826 F. Supp. 2d at 135; Murphy, 740 F. Supp. 2d at 74–76. Likewise, D.C. law allows spouses and next of kin to recover solatium damages. D.C. Code § 16-2701.

Although this Court has determined Iran is liable, it lacks evidence to render damages for individual plaintiffs. Guided by the findings and conclusions in this Memorandum Opinion, the Court will refer the plaintiffs' individual claims to Special Masters, to whom the plaintiffs will submit damages evidence. See 28 U.S.C. § 1605A(e). The Special Masters will consider the evidence and prepare reports and recommendations on the measure of damages warranted for each plaintiff and such other matters as specified in this Memorandum Opinion. If relevant, the Special Masters will report on, and the Court will consider, whether individual plaintiffs' claims are consistent with the Limiting Opinion barring IIED recovery for plaintiffs beyond the blast radius, as well as other general limitations imposed by tort law. For example, the Special Masters should consider, and this Court will then review the reports to determine, whether plaintiffs who merely saw the blast but did not feel a shockwave satisfy the "imminence" requirement for assault, see Restatement (Second) of Torts § 29 cmt. (b) (defining imminence necessary to state a claim for assault as being "so close to striking distance that [one] can reach the other almost at once"), and whether any plaintiffs fall within the "professional-rescuer's doctrine," which bars recovery for professional rescuers, see Exposure to Danger During Rescue Effort, 3 American Law of Torts § 12:38 n.13. The Court shall defer consideration of the appropriate level of punitive damages

9

until the matter of compensatory damages is ripe for consideration. An order appointing Special Masters and adopting an administrative plan for the damages phase of the proceedings will issue separately.

## **CONCLUSION**

For the foregoing reasons, judgment on liability will be entered in favor of plaintiffs. Plaintiffs' individual claims will be referred to Special Masters, who will receive evidence and prepare proposed findings and recommendations for the disposition of each individual claim in a manner consistent with this opinion. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: October 23, 2025